UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JANET MILLER, | : | Bankruptcy No. 05-16155DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the United States Trustee's (the "UST") Motion for Entry of an Order of Contempt Against Thomas Turner ("Contempt Motion").  At issue is Thomas Turner's ("Turner") acknowledged failure to comply with this Court's Order dated July 5, 2005 (the " Sanctions Order").  An evidentiary hearing was held on November 29, 2007 at which Turner defended his noncompliance by contending he had not been properly served with the motion that gave rise to the Sanctions Order.[1]  For the reasons set forth below, I find the Sanctions Order to be enforceable against Turner and his failure to comply with its mandate to be a civil contempt.  Accordingly the Contempt Motion shall be granted, and further sanctions as specifically outlined below will be ordered.

---

[1] The hearing was continued from October 25, 2007 at the request of the United States trustee ("UST") to allow Turner to retain counsel.  He was represented in this contested matter by Joseph Gembala, Esquire.

**BACKGROUND**

On April 29, 2005 Janet Miller ("Debtor") filed a voluntary petition under Chapter 13. Exhibit T-4.[2] The petition was also signed by Turner on April 29 as a non-attorney petition preparer with an address of 508 White Horse Pike, Collingswood, New Jersey ("New Jersey Address"). Exhibit T-1. Accompanying her petition was a Statement of Affairs that identified Turner at the New Jersey Address as having received $300 for debt counseling, and a pro se statement identifying Turner at the New Jersey Address as having assisted her in filing or preparing papers in the case. Exhibit T-1. On May 10, 2005 the UST filed a Motion for Disgorgement of Fees Paid by Debtor and for the Imposition of Fines and Other Relief Pursuant to 11 U.S.C. § 110 (the Disgorgement Motion"). The Disgorgement Motion contended that Turner, identified and compensated as a petition preparer, had failed to sign and affix with the required identifying number the documents he prepared and to provide copies of same to the Debtor who never signed them herself. As such, he was charged with violations of various subsections of § 110. The Disgorgement Motion also averred that Turner engaged in the unlawful practice of law.

A Notice of Motion, Response Deadline and Hearing Date (the "Hearing Notice") was filed contemporaneously with the Disgorgement Motion by the UST. The accompanying Certificate of Service states that the Disgorgement Motion was served on Turner at the New Jersey Address by mail on May 11, 2005. Exhibit R-1. Subsequently on May 12, 2007

---

[2] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

-2-

(and apparently again on May 13, 2005) the Clerk of the Court issued another Hearing Notice and caused it to be served by the Bankruptcy Noticing Center (the "BNC").  A certificate of service from the BNC does not show service on Turner.  Exhibit R-3.  No response was filed to the Disgorgement Motion.

On June 13, 2005 the hearing on the Disgorgement Motion was held.  Turner did not appear, and the UST made a record in support of the relief sought, i.e., disgorgement of his $300 fee, fines in the aggregate amount of $3,000 for the § 110 violations and a prohibition on the engagement in any further fraudulent, unfair and/or deceptive practices, including the unlawful practice of law.  On July 5, 2005 an Order was entered (the "Sanctions Order") granting the requested relief and directing the Clerk of Court to serve the Sanctions Order at the New Jersey Address.  Exhibit R-3.

On July 19, 2007 Turner appeared before this Court, FitzSimon, B.J., in connection with, inter alia, a motion to show cause why fees paid to John Croom ("Croom") as debtor counsel in the Chapter 13 case of James Kelly should not be disgorged.  Exhibit T-6.  At that hearing it was revealed that Croom suffered from an impairment that disabled him from practicing law and had indeed abandoned his clients to Turner.  Exhibit T-5.  In the course of his testimony, Turner was presented with a copy of the Sanctions Order and acknowledged its contents.[3]  He contended that he had never seen it nor did he know about it.

---

[3] There is no question that Turner read the contents of the Sanctions Order:

> Q: Mr. Turner, I'd like you to take a look at that . . . and then tell me what that document is.
> . . .

(continued...)

-3-

Contempt Motion ¶3; Answer ¶3;[4] Exhibit T-6 at 95-96.  Turner has admitted the UST's averment that he has not complied with the provisions of the Sanctions Order.  Answer ¶4.

Other than the previously referenced documents, the only evidence elicited at the November 29 hearing on the Contempt Motion was Turner's testimony that, at the time the relevant documents were served, he no longer lived at the New Jersey Address but rather had relocated to Elkins Park, Pennsylvania.  There was no evidence to corroborate this contention.  His counsel failed to elicit any testimony to explain Turner's failure to comply with the Sanctions Order after being presented with it at the July 19 hearing before Judge FitzSimon.

**DISCUSSION**

A. Contempt

The UST carries the initial burden of making out a *prima facie* case for civil contempt by demonstrating (1) the existence of a specific and definite court order which

---

(...continued)
>   A:  It – it's an order requiring disgorgement of fees paid by debtors imposing fines and granting additional relief pursuant to 11 U.S.C. 110
>
>   Q:  That, in fact, is an order sanctioning you, requiring you to pay fines in disgorgement, signed by Judge Sigmund, correct . . .
>
>   A.  Yes

Exhibit T-6 at 95-96.

[4] Turner prepared the answer to the Contempt Motion, admitting ¶¶1-5 and denying all other averments as conclusions of law for which no response was required.  During the month extension he was afforded to retain counsel, no amendment to the answer was filed.  The defense of non-service was not raised in the Answer.

-4-

unambiguously commands the defendant to perform in accordance with such order and (2) that the defendant had knowledge of such order. Affairs With A Flair, 123 B.R. 724, 727 (E.D. Pa. 1991).[5]  A prima facie case for civil contempt must be established by clear and convincing evidence. Id.  The burden then shifts to the defendant to come forward with evidence that shows a present inability to comply with the order. Id.  This burden has been strictly construed: "Even if the efforts [the alleged contemnor] did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that [he] did not make 'all reasonable efforts' establishes that [he] did not sufficiently rebut the ... prima facie showing of contempt." Id. (*quoting* Hodgson v. Hotard, 436 F.2d 1110, 1115 (5th Cir. 1971)).

There is no dispute that the Sanctions Order satisfies the first element.  It clearly and unambiguously commands Turner to disgorge his fees to the Debtor and pay fines of $3,000 to the Clerk of the Court.  Similarly, the UST has demonstrated that Turner had actual knowledge of the Sanctions Order as of July 19, 2007, when it was presented to Turner in the hearing before Judge FitzSimon.  While Turner contended that he had not been served with the Sanctions Order when it was entered, suggesting that he had no knowledge of it at that time, it is clear that he has known of it for five months.[6]  Thus, the prima facie elements of contempt have been met by clear and convincing evidence.

---

[5] Willfulness is not a necessary element of civil contempt. Robin Woods, Inc. v. Woods, 28 F.3d 396, 399 (3d Cir.1994).

[6] Finding Turner's knowledge unquestionable, I need not determine if he actually learned of the Sanctions Order when it was served upon him at the New Jersey Address.  The UST challenges the credibility of his uncorroborated statement that he had moved and thus never received a copy of the order.  I address that contention only to the extent necessary to find that the Sanctions Order having been properly served, is enforceable.

-5-

The UST having made a <u>prima facie</u> case of civil contempt, the burden of production shifted to Turner to demonstrate an inability to comply with the Sanctions Order. Turner has not attempted to do so. Instead, Turner asserted at the November 29 hearing that the underlying Disgorgement Motion and Sanctions Order were sent to the wrong address, suggesting that he may not have seen it when served. Turner does not enunciate the legal significance of his unsupported and self-serving statement. Therefore, I will address the conceivable implications of his "defense." As noted above, whether Turner was served with the Sanctions Order when it was entered is not dispositive of his knowledge for the purpose of finding civil contempt since he has known of it since it was shown to him in open court on July 19, 2007.

If his statement is to suggest that lack of service is a defect that justifies noncompliance, I must reject that thesis as well. "So long as the court has subject matter jurisdiction over the action and personal jurisdiction over the respondent, respondent may not raise issues regarding the validity of the underlying order in defense to the motion for civil contempt." <u>U.S. v. Rose</u>, 437 F.Supp.2d 1166, 1171 (S.D. Cal. 2006). Indeed, "[t]he orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" <u>Maness v. Meyers</u>, 419 U.S. 449, 459, 95 S.Ct. 584, 591 (1975) (*quoting* <u>United States v. United Mine Workers</u>, 330 U.S. 258, 293, 67 S.Ct. 677, 696 (1947)). Once Turner became aware of the Sanctions Order on July 19 his only permissible option was compliance. Otherwise this Court's orders become meaningless. There are court rules, such as Federal Rule of Civil Procedure 60(b),

incorporated by Federal Rule of Bankruptcy Procedure 9024, that provide a vehicle for a party to seek relief from orders which he believes to have been improperly entered.[7] Rather than take that fully acceptable course of action, Turner simply chose to defy the Sanctions Order.

As noted by the above-cited authority, the issuing court must have adequate jurisdiction over both the subject matter and the person. The Court's subject matter jurisdiction over the Disgorgement Motion, which was brought pursuant to 11 U.S.C. § 110, is not disputed. See 28 U.S.C. § 1334. Nor has Turner made any allegation that this Court lacked personal jurisdiction over him, either in his filed response to the Contempt Motion or at the November 29 hearing. See, e.g., Government of the Virgin Islands v. Sun Island Car Rentals, Inc., 819 F.2d 430, 433 (3d Cir.1987) (defective service waived if not challenged in first defensive pleading). In any case, while "service of process is an ingredient of personal jurisdiction as that term often is used in the United States, . . . the sort of jurisdiction pertinent to a collateral attack depends on whether the service is constitutionally adequate-that is, whether the plaintiff uses a method reasonably calculated to produce actual notice." Ma v. Continental Bank N.A., 905 F.2d 1073, 1076 (7th Cir. 1990). See also Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S.Ct. 2104 (1988) (the Due Process Clause requires every method of service to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (citations omitted)).

---

[7] Of course the filing of such a motion does not obviate the need to comply with the order pending resolution of the motion, which "does not affect the finality of a judgment or suspend its operation." Fed. R. Civ. P. 60(b).

As a petition preparer, Turner has a duty to provide his address on every document he prepares for debtors. 11 U.S.C. § 110(b)(1). He did so on the Debtor's bankruptcy petition, indicating the New Jersey Address as of April 29, 2005. I therefore find that the UST's service of the Disgorgement Motion on the address provided by Turner himself less than two weeks prior was reasonably calculated to provide Turner notice of the UST's charges and an opportunity to present his objections. Accordingly, I find that there is no deficiency, constitutional or otherwise, to the enforceability of the Sanctions Order.

### B. Contempt Sanction

Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience. McDonald's Corp. v. Victory Investments, 727 F.2d 82, 87 (3d Cir. 1984). To that end, the law affords courts considerable discretion in fashioning an appropriate sanction for contempt. Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994). Here, the UST seeks to coerce Turner's compliance with the original Sanctions Order and suggests that imprisonment may be the incentive needed since monetary sanctions have not elicited compliance. It is indisputable that "a contemnor who has the ability to comply with the underlying court order can be imprisoned indefinitely until he complies with the underlying court order, . . ." Chadwick v. Janecka, 312 F.3d 597, 609 (3d Cir. 2002). Nevertheless, I am also guided by the principle that a court issuing a contempt sanction "should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders. If compliance is not forthcoming, the initial penalty may

be increased, or a new penalty appropriate under the circumstances may be selected." Matter of Grand Jury Impaneled January 21, 1975, 529 F.2d 543, 551 (3d Cir. 1976).

In this case, I think enhanced economic penalties for continued disobedience is adequate as a starting point but with the understanding that there will be a short window for compliance after which incarceration shall result. Turner shall comply with the Sanctions Order, i.e., disgorge to the Debtor the $300 fee he received and pay the outstanding $3,000 penalty to the Clerk of the Court on or before December 21, 2007, or he will pay an additional $50 per day from July 19 to the date of payment.[8] The $50 per diem fine shall continue to accrue until full payment is made. The payment shall be made in immediate available funds and shall be accompanied by Turner's certification under penalty of perjury filed with the Court, attaching evidence of payment.

Turner's failure to comply by December 21, 2007 will result in a further Order ("Second Contempt Order") forbidding Turner from providing any kind of services related to bankruptcy, including acting as a petition preparer or providing any services, direct or indirect, to bankruptcy attorneys or persons contemplating or having filed for bankruptcy relief. The Second Contempt Order shall be posted on the Court's website to provide notice to the bar and the public that Turner is prohibited from providing any bankruptcy services.[9]

---

[8] Such additional penalties total $7,200 as of the date of this Memorandum Opinion.

[9] At that time, the UST may also provide a copy of this Order to any person she believes may be using Turner's services. If Turner's contempt is not purged by January 10, 2008, any attorney with knowledge of the Contempt Order who uses Turner's services in connection with the practice of bankruptcy law may be subject to sanctions him or herself.

Finally, if disgorgement to the Debtor and full payment of all penalties has not been paid to the Clerk of the Court by January 11, 2008, a further Order shall be entered to cause Turner's imprisonment. Any such incarceration shall continue until Turner has complied with the Contempt Order by making full payment[10] or takes appropriate action to demonstrate an inability to do so.[11]

An Order consistent with this Memorandum Opinion shall issue.

DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge

Dated: December 11, 2007

---

[10] Upon incarceration the additional per diem penalties shall stop accruing absent further proceedings to determine their appropriateness. See Grand Jury, 529 F.2d at 551 (finding that coercive fine or imprisonment in civil contempt should be used interchangeably or successively but not simultaneously in the absence of findings supported by the record showing necessity for such severe actions).

[11] Turner has already failed his burden of production to demonstrate (or even raise) an inability to comply with the Sanctions Order, making this Memorandum Opinion and Order appropriate. The burden will therefore be on Turner to institute an appropriate motion to adjudicate any claim of a *present* inability to comply with the Sanctions Order or the Order attached herein.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JANET MILLER, | : | Bankruptcy No. 05-16155DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 11th day of December, 2007, upon consideration of the United States Trustee's Motion for Entry of an Order of Contempt Against Thomas Turner ("Contempt Motion"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. The Court finds Thomas Turner to be in civil contempt of this Court's Order dated July 5, 2005 (the "Sanctions Order");

2. On or before **December 21, 2007**, Turner shall comply with the Sanctions Order, i.e., disgorge to the Debtor the $300 fee paid to Turner and remit the outstanding $3,000 penalty to the Clerk of the Court. Turner shall file an affidavit of compliance and a receipt evidencing disgorgement to the Debtor;

3. Failure to comply with Paragraph 2 of this Order shall result in a further Order ("Second Contempt Order") forbidding Turner from providing any kind of services related to bankruptcy, including acting as a petition preparer or providing any services, direct or indirect, to bankruptcy attorneys or persons contemplating or having filed for bankruptcy relief. The Second Contempt Order shall be posted on the Court's website to provide notice to the bar and the public that Turner is prohibited from providing any bankruptcy services;

4. If disgorgement to the Debtor and full payment of all penalties has not been paid to the Clerk of the Court by **January 11, 2008**, a further Order shall be entered to cause Turner's imprisonment. Any such incarceration shall continue until Turner has complied with the Contempt Order by making full payment or takes appropriate action to demonstrate an inability to do so.

                    DIANE WEISS SIGMUND
                    Chief U.S. Bankruptcy Judge

cc:    Judge Bruce Fox
       Judge Stephen Raslavich
       Judge Eric Frank
       Judge Richard Fehling
       Judge Jean FitzSimon

Copies to:

Thomas J. Turner, III
318 Ashborne Road
Elkins Park, PA 19027

Joseph Gembala, Esquire
Erik B. Jensen P.C.
1528 Walnut St., Suite 1401
Philadelphia PA 19102

Dave P. Adams, Esquire
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

William C. Miller, Esquire
P. O. Box 40119
Philadelphia, PA 19106-0119